Third case is Nyesha Swope, Andrea Turner, et al. v. Episcopal Foundation of Jefferson County, DBA St. Martin-in-the-Pines, 24-12984. And Ms. Bubbitt, I see that you have reserved some time for rebuttal. You may proceed. Good morning. My name is Mary Bubbitt-Jackson and I represent the Plaintiff in Appellants and Cross Appellees in this action. This is a case arising out of claims out of the Fair Labor Standards Act and the Family Medical Leave Act. These are both well-established laws, very straightforward. The facts of this case are also relatively straightforward and it should have led to a relatively straightforward result. But instead, due to a defendant appellee's efforts to thwart this circuit's long-established process for settling FLSA cases and insistence on a form over substance process in the lower court, we ended up in a situation where the district court has excluded from the claimant's overtime pay very clearly bonuses that should have been included, improperly dismissed Ms. Swope's individual unpaid lunch break overtime claim, and improperly dismissed her FLSA claims. There may be some blame to go around in how this case was litigated, but I'm not sure it all rests on one side or the other here. In your complaint, it seems to me that fairly read, and I think the district court here is as fair a person as one could get, read two claims in there, two subclaims in your FLSA claim. One is that there was hourly bonuses that were paid because one worked in the COVID unit and those were not calculated as part of overtime. And the second was a one-paragraph reference to not being paid during lunch breaks because your client was forced to clock out and had been made to work and she wasn't paid for that time. I don't see, and I consider myself a fair judge, I've read it up and down, I do not see any reference to what I'll call the all-employee bonuses from July and December. Where in your complaint would you say that fairly, plausibly, puts those allegations in front of the district court? Your Honor, I would say that those would be incorporated in with the claim that unpaid COVID, that COVID bonuses or COVID pay that was paid out was not included in the overtime claim at the time. But the problem is, but counsel, the problem is that, and I know you make that argument to her, to the district court judge, but if you read the complaint, it's clear that you're referencing hourly time, hourly bonuses. Let me go directly to the allegations here. In paragraph 25 of your amended complaint, this is docket entry 13, in July 2020, defendant implemented a policy whereby it agreed to pay employees who worked in the COVID ward a reference to residents who were sick with coronavirus an additional $5 per hour. And then COVID ward is then used definitionally throughout this claim until you get to the paragraph about the lunch break. That says nothing about the all employee bonus, does it? It does not explicitly, and the reason for that is because at the time the complaint was filed, that was Ms. Swope's understanding of her claim, but the evidence was later developed and discovered. That happens all the time. Counsel, nobody blames plaintiff for that and no one blames you or counsel for that. That happens. So you get discovery and you learn, but the remedy for that is rule 15. It isn't at summary judgment to then come and say, hey, there's this other stuff that I didn't mean to put, I didn't actually put in there, but we're entitled to that too. And she was underpaid for that also. So this issue was raised before the summary judgment motion. The parties have been fighting about this issue and the judge refused to consider this issue even to allow the pleadings to be amended to conform to the evidence. Did you ask under rule 15 for the pleading to be amended? We raised the issue in motions and the judge just denied it. She said it's not part of the claim and that's where we ended up. Can you show me a motion to amend? We did not file a motion to amend because we'd been trying to make the argument and it just was falling on deaf ears. And it's our position that not allowing that amendment, even without a formal motion to amend, was improper. The problem is we have case law that seems clear that unless a request is made to amend and B, a new complaint is attached, that we can't fault a district court judge for not granting leave to amend. And the reason for that's clear, we need to know what the allegations are in the new complaint to see whether we're going to allow that or not, that there's a reason for that rule. And I would direct the court to Cain v. Guerin, where it said that if this is a new theory, it's not a new theory of recovery, it's when you're trying to prove a different underlying fact. This is just a different element of the damages of the COVID pay for it. No, it's a new theory. It's a completely different bonus with a completely different calculation structure for how regular pay is included and entitled. You even cite a different statute for why this particular bonus is included than would have been for the hourly rate one. But it was encompassed and the purpose of this bonus was the same reason as the different wage claim, that it was to incentivize and keep these claimants to show up, to have them appear. Let's assume for the moment that you're right about that. The district court also made an alternative ruling on this issue and specifically said that there was no factual dispute about the nature of this bonus to not fall within E3. That is absolutely incorrect. Can you point me to what you believe to be disputed evidence? I've read the entire deposition of the corporate representative, what you both rely on. Can you point me to what you think is the best evidence? Ms. Mahome, during her deposition, repeatedly referred to this bonus and acknowledged this is an incentive bonus, this is to keep workers. And while they may call it a discretionary bonus after the fact to try to avoid having to include it, it's very clear if you ignore what you call it and you look at what it did, this is a bonus that wasn't paid out due to anything other than we need to keep you here. If you're here, you get this money. And that's why we would argue that it would be. She absolutely testified to that. But as I understand the test, the test is under the statute, and this is E3, that as long as the bonus is discretionary, and discretionary means that they didn't know about it and didn't promise it and it wasn't contractually entitled, then it is discretionary under the law. Am I missing something? I would disagree with that, because in this case, this was a published thing that they acknowledged that they were going to do, and they let the employees know. Show me the evidence of that. You're right. She certainly says this was an incentive bonus. It would be in the memorandum where they said, look, this is what we've done, this is how we did it, this is how we paid our bonuses. And these bonuses, under the law, they don't depend on the powers that they were. First of all, you didn't cite a memorandum in your brief, but can you tell me what docket entry of memorandum? It would be docket entry 80, let me find it, 86-6 or 5, I have it written down up here. And what does that say? That's the memorandum that comes out afterwards that they publish to say, we messed up the calculation, right? No, no. There are a couple throughout this time period of memorandum that they put out of different things that they were trying to do. And was that memorandum published near the time that the bonus was paid? I believe some of them were published all throughout the COVID time period. Okay, so you're saying that there's a memorandum which promised to pay an incentive pay bonus and that that is the incentive pay bonus we're talking about here, the July and December ones. And it was, this memorandums were sent not near the time that the bonus was paid. That's what you're telling me I'm going to find in the record? I'm saying that if you look at the combination of rec dots 80-6-5 and 80-6-6, those are the memoranda that they were putting out about what they were doing for COVID pay. And I just want to be clear. Listen to my question carefully. When I look at those documents, it's going to show me that those say that the incentive bonus was going to be paid to employees no matter what, promised them it was going to be paid. And it was done not near the time that they were paid in July and December. I don't have the wording in front of me right now, so I can't testify or say to that. What about the timing? When did the memo come out versus when the bonus was paid? So I think there's a who we made it bonus that came out near the end, but then there's other memoranda that came out and talked about different types of pay earlier that I believe they came out earlier. Right. And then the who we made it was the one I believe right at the very end that would. Let me ask you this if I could and help me out. Okay. Because this, I'll call it the COVID incentive bonus, right? If we find that it wasn't sufficiently pled in the amended complaint and the complainant issue, and then is it true that you represent 11 individuals, right? We represent three. We had 11 people who opted in, the court certified, and then now we have the three, right? Of those 11, eight cashed the check. Now it doesn't include the incentive bonus, right? The COVID. Yes. So they're fully satisfied. If we conclude that that should not have been included, then those eight are, yes, and they are not. Okay. So and then we have three left, right? Yes. Swope, Turner, and McDowell. Yes. Now, they, two of them did not cash the check and the third one was lost or what would happen? He never got a check. She just never got one. So and then what happens now? We would ask that what the district court did is that they admitted that they owed that portion and the district court ordered them to pay those overtime wages they admitted they were owed plus liquidated damages and held that they were prevailing parties and we asked that the court to uphold that. So they're fully satisfied too if we put aside the COVID incentive bonus?  On the- Which means there's no dispute even for this appeal if we find that the amended complaint does not include the incentive bonus.  That, well, our argument, of course, the appeal is that we should have done that.  Correct. Correct. I know you don't want that. But if we find that, you're stuck with that and the case is over. For that portion. We also have Ms. Swope's unpaid meal break overtime claim and then the family medical leave act claim.   What do you want to say about the meal break in one minute? Ms. Swope claimed, asserted a meal break and in its motion for summary judgment, defendant didn't directly mention this unpaid lunch break claim, but nonetheless, Ms. Swope included evidence from her deposition testimony that she had worked unpaid lunch breaks for which she were, and during weeks that she worked overtime, she wasn't able to quantify it during her deposition. But the district court dismissed her unpaid lunch break overtime claim, technically without it maybe directly being in front of it, but also disregarding the evidence that she did put before the court. But he just said it was insufficient evidence, right? And that's incorrect. If you look at Beasley v. Hillcrest Medical Center, the appellate court reversed summary judgment when it found that even though the plaintiffs didn't set forth a precise amount in opposition to summary judgment, there wasn't enough evidence that a jury could have said. Counsel, here's the testimony you pointed to, and this is from docket entry 79-3 at page 38. Your client testified, it could have been like, I'm not really sure, maybe two, three days out of the week, and that was what was for there to show. What we said in Allen is there has to be sufficient evidence of amount and extent of work so that you can make a just and reasonable inference. How when you say, I'm not sure, maybe, could, two or three, without giving the amount of days to any sort of reasonable certainty, the amount of time within those days to reasonable certainty, could we say that there is sufficient evidence to make a reasonable and just inference? Because it was for the jury to decide. There was enough evidence there for the jury to infer that there was overtime work. So let's say I'm a juror. How am I, I now have to do a calculation. I now have a damages part of it, and I've got to do a calculation. How based on could, should, not sure, maybe two or three days do I award an amount to your client? She could have gone back through and tried to figure out from her records and had a better understanding of that numbered claim at trial that as a person of not super sophisticated education she wasn't able to do on the fly during her deposition. But we needed the opportunity to be able to present that to the court. But you're on summary judgment. So if she's got the evidence and hasn't presented it in response to the motion for summary judgment, I'm not sure why you think that she can then present it to the jury. They didn't, well, they listed out different claims to dismiss in the summary judgment, and they actually didn't directly mention the unpaid lunch break claim. And so it was unclear whether this was even part of the summary judgment, but we put it in just to show that there would be evidence of that claim. Thank you. Thank you. You have four minutes for rebuttal. Ms. Barletz. May it please the court. My name is Rachel Barleta. I represent the defendant, St. Martins and the Pines, in this case. I'll just start with the question that the court raised about the timing of the memo. There is only one memo at issue or that was produced in the case, and that was referred to as the whew, W-H-E-W, we made it memo. And the reason it was entitled whew, we made it memo was because they had made it through COVID. And the memo was issued at that time saying to the employees. What's the date? I apologize, Your Honor. I don't have the date. So the bonuses are given, the ones at issue are July of, I think it's July of 2001 or July of 2000 and December of 2000, right? I believe so. 2020. 2020. I said 2000. 2020. That's what I meant. Sorry. Right. Is the memo near or around December of 2020? It was after, it was towards the end of the COVID pandemic, so it would have been later in the year. So there's no memo from before December 2020 or July 2020 indicating that there was going to be payment of an all employees incentive bonus? No. And the memo doesn't even say anything close or approaching that. And as Ms. Mahone testified, and her testimony on this point was undisputed, that the employees were not told in advance. If you stay here a certain amount of time, you get this. It was a surprise to them, was her specific testimony. Can I discuss your cross-appeal? Yes. Okay. Explain to me how winning or losing on summary judgment moots the case. I don't think that that was the argument that we made. But what is the argument? That the checks are cut? That you cut the checks? Yes. The argument is that the plaintiffs received all relief to which they were entitled and there was nothing further for the court to do. Forget FLSA for the moment. Okay. Forget it. State law. You guys are from Alabama. Alabama, slip and fall. Someone's at Buc-ee's, slips and falls on the Birmingham Buc-ee's. They sue Buc-ee's and they allege the corporate entity, which is based in Texas, so it's diversity, and they allege $100,000 in damages, the plaintiff. The Buc-ee's, a complaint is filed, standard slip and fall complaint, literally the one right from the civil procedure book. Buc-ee's says, answers, admit, admit, admit, admit, and clip a check for $100,000 to there. Is that case moot at the moment that happens? Yes. I mean, the plaintiff has received everything that they're asking for. It's moot. The moment that happens, it's moot. And there's nothing for the court to do at that point because they've already been provided all the relief to which they were entitled. What about attorney's fees? Well, what the district court said and what the Supreme Court has said is that the attorney's fees is not sufficient. Doesn't judgment have to be entered? That's Tholby U.S. Bank, Your Honor, 2020. Attorney's fees not sufficient to create Article III case or controversy. Counsel, doesn't judgment have to be entered after the hypothetical I gave you? Well, the court could, yeah. I mean, the court has got to dispose of the case. Right. It has to enter judgment, right? Finding the case moot. Well, at that point, judgment is entered, right? Right. Right. But that's the point we're at. You're saying it's moot before judgment's entered. All the district court did here is we're in the same boat. There's a part of the claim you admit that we're wrong. You guys did the right thing. Here's the checks for everyone and attached it. They then moved for partial summary judgment for judgment to be entered as to that part of the claim. How is it moot before that happens? Well, because, again, I think that what the standard is has been expressed by the United Supreme Court in this court is, is there any relief left for the court to do? There is. It can enter judgment. That is the relief. On the grounds that it's moot, right? Because there's nothing else for the court to do. Not on the grounds that it's moot. On the grounds that it's moot, it becomes enforceable. Because until the check is cashed, and even then there could be a stop payment on it, the only way it's enforceable is with a judgment. That is the relief that could be given in the case. You get a judgment stating you not just are willing to do it by your own grace. This isn't a settlement case. There's no contract. That there's an enforceable that I can go to court and say, give me my money. But I think that's where the distinction is, where this court has been reluctant to say in other cases, whether it's the FDCPA, Zinni case, or the Wolf case, that the plaintiff relies upon is that idea of if it's an offer, if you're just offering, if you made a settlement offer, there's nothing, there's... There was no offer of judgment in this case. Correct. Why not? Because that leaves it up to the plaintiff to accept it. And then you'll get an advantage if later you win, right? And I think where the public policy and where these decisions kept coming down is, well, if you've just offered it to them, then there's no enforcement mechanism, which I would disagree with. I mean, first of all, people file motions to enforce settlement in courts-retained jurisdiction to ensure the settlement terms are carried out. The counsel, that's if there's a settlement. I agree with you.  But there's no settlement here. Because they received the money. And this was the interesting thing that this... Receiving the money is... I mean, that's like if someone just mails me a check in the mail, there's no enforceable contract between us. It just happens to be in the mail. I can decide to cash in the money. But you already have it, though. I understand. See, and that's the difference. But counsel, what I don't have is a judgment against your client. But you don't need one because you have the money. I understand. How do I know there's money in the bank? I mean, that is what the Supreme Court talked about in Campbell v. Ewald. They said that this might be a different result that we don't reach if the money was already in the accounts. But what the Supreme Court said in Campbell is you can't settle your way into mootness. This is what has happened. Because what would happen is if we allowed what you did, any plaintiff, after their suit, they can tell you pound sand before, no matter how many demand letters are sent by the plaintiff. The defendant can obstruct. And then they have to go to court to enforce. And the moment that happens, you can say, okay, we're paying, and the whole thing goes away. And you're not entitled to any other remedy that you might have under the statutory framework if we were to allow that, whether it's a slip-and-fall diversity case or whether it's FLSA. Now it just so happens with FLSA that there's actually an added requirement that the settlement be deemed fair, that there has to be a review by the court of under the Lynn Haven case or the Lynn case. But then, but you, if you have an offer of judgment, and the court says... This isn't an offer of judgment. I agree. So Judge Moreno's question is exactly right. This isn't an offer of judgment. You guys chose not to go down that route. You chose not to go down the settlement route. What you chose to do is to say, and I understand it, from the defendant's perspective, we're wrong. We just want to pay this off. We don't want attorney's fees that are going to rack this up. I get it. But that's an attorney's fees question to show that they unnecessarily litigated. I had one of these where the district court judge in a similar thing reduced fees by 85% because it went on far too long. But this isn't the way to do that. Well, I respectfully disagree, Your Honor, because this is what the court recognized to end fast cash, which is the correct thing for the employer to do is to get the money in the people's hands who didn't get it as fast as they needed. And that's what they did. We did. It was deposited directly into these employees' accounts. The good folks in the Eastern District of Wisconsin may have treated this differently and they may have mooted this differently. But I just, I don't see any authority from the Supreme Court or our court which says that you could unilaterally send a check to the plaintiff and moot the case that way. Every authority I have seen says exactly the opposite of that. Well, again, every authority, Zinni, Campbell that has said this, it has all been in the context of somebody offering. And the court said, well, it's just an offer. So we don't have a mechanism to enforce it. But we gave the money. It was not just an offer. We made them whole. And that was where the Supreme Court said, if this might be a different outcome, if that is how you would have gone about, if that is how the defendant had gone about this, if they had just paid the money. Because at that point, they have all the relief to which they're entitled. I just want to be clear of the rule that you're advocating and you're saying is the law. You're saying that a defendant can take an envelope stuffed in cash and have a process server, put it in the plaintiff's pocket, and then run away and say, we're done. You've now been paid. Go away. That moots the case at that point. Because that's cash. That's the most that you can take that away. It should if the plaintiff admits, I mean, if there's no dispute that from the plaintiff's side that that didn't completely provide full and effective relief. So it immediately. Because there's nothing else for the court to do at that point. Here in this case, we had two plaintiffs, though, who didn't cash the check, right? So what, so they didn't get compensation. So at least you have that. It's not a super big, it's not a class action, but it's a fair labor standard. So we still have issues, right? No, Judge Moreno, we would say, as we sign an authority that a plaintiff can't willfully just refuse to cash checks, or if you stuff, to Judge Lux's example, money in their pocket, just throw it out on the side of the road and say, no, I want to go to court. I want to litigate. Well, certainly the SWOPE would say, the reason I'm not going to cash that check is that I still think there's an issue with the COVID incentive bonus, as we've been referring to it, and also with her lunch break claim. Which, that, the court allowed them time to do discovery and determine whether or not that they had not been adequately compensated, and of course, after years of discovery, we came back to the same result, which is, yeah, actually, we got all the money that we were entitled to. I know, but that conflates winning at summary judgment with mootness. You were right in the end, but that doesn't make the case moot because you were right in the end. There was a dispute between the parties, which, for jurisdictional purposes, we actually assume, so in other words, you're right about the question. You're just not right about the methodology. The question is, can we grant relief? But the methodology is, we assume that they're right. So assuming they're right on the lunch break claim, assuming they're right about the all-employee bonus, can we grant relief? And the answer is certainly yes, is it not? Well, and that's, I would agree to the extent that they can prove that they haven't been, but I think mootness is where the case is postured at that particular time, and retrospectively, they had all the relief that they were entitled to at that time. So you're arguing that the eight people who cashed their checks, it was moot then, and if you account for Ms. Swope and, is it Ms. Turner, that they had continuing claims, and so they fought those out, we gave them the opportunity, but the moment the court ruled against them on either the one issue or the two issues, it then became moot because our prior checks . . . Correct, at the time, and because that's how mootness is evaluated. What about McDole? Well, Your Honor, it's a $2 check, and we've argued that that is diminished. We're going to talk about diminishing in a second, too, but if one plaintiff is there, it doesn't moot the case, does it? Well, I mean, I cannot dispute that she did not get the relief that the rest of the people got. How can we moot an entire case where there's still one plaintiff who didn't receive, admittingly, did not receive relief? Which is why we've alternatively argued that her claims . . . Okay, so let's talk about the diminished. . . . as a diminished doctrine. Can you point to any authority from a circuit court, the Supreme Court, or this court, that has acknowledged an underlying principle that is outside the statute and outside the regulations which says that there is a de minimis exception? In an FLSA case, I cannot, Your Honor, but I don't think that it makes it any less of a valid argument. I mean, courts have a long time recognized as a common sense principle that we don't go over courts over dollars and pennies. Are you familiar with the Donning and Doffing cases? Yes. And you're familiar with the Supreme Court's Donning and Doffing case? Which one of them? I think it's Sanofur is the case. So at some point all was litigating the Donning and Doffing stuff, and at some point the Supreme Court weighed in. And in doing so, that was about sort of time. It wasn't about money like this is. So there is a recognized de minimis exception, unlike here. But as to that, what the Supreme Court said in the majority opinion in that case was that the FLSA, unlike other statutes, deals with trifles. It does deal with trifles. Because it's always going to be small. We're talking about minimum wage workers and minimums that people were there. The nature of it is small. That's why we give an attorney's fees remedy to allow representation for folks to be able to come to court. How do we reconcile that concept with what you're advocating? Because it has limits. And that's all the cases cited by plaintiffs to this point said, well, sure, a dollar a week over two years, maybe that's not de minimis, plus when you add liquidated damages in. But if you're talking about $0.02, $0.05, $0.50, $2, as we are with Kenesha McDole, the cost of issuing the check is more than what she's going to ever put in her bank account. And so I don't think that we in federal courts and state courts have long recognized the principle. It's a common-sense principle that if you are quibbling over pennies and $2, that that is de minimis. There is a common law idea behind that. I don't think the FLSA or anything in the regs says that that cannot be taken into account by this court. Whose property do I say it's okay to take away and don't give a remedy to? Like tell me what the limit is on what I can say. All right, this is your property. You've earned it. But you don't get it. You have no remedy for it. Tell me where that limit is. Well, I think it's a case-by-case basis. And one of the courts talked about looked at, you know, the filing fee. I mean, if you're going to court, you know, over something that's less than what you actually have to pay to file a complaint, perhaps that's a line that the court can draw as de minimis. Or maybe even half the filing fee. Here, we're talking about $2.13. And I don't think that that is a principle that this court or a conclusion that this court couldn't reach that wouldn't be widely accepted to say you don't go to court over $2.13. It doesn't make any sense. It's just not a good use of taxpayer dollars or judicial resources. You have to draw the line somewhere. Thank you, Ms. Marlott. Ms. Bubbitt, you have four minutes. Yes, and I want to start. So I pulled up the Hue We Made It memo, and I misspoke. It's 86-5. And then there are a couple of other memos from a little bit earlier in the year. That's 86-4. And in those two earlier memos, they talk about other types of incentive bonuses but don't mention that one. And then when you get back to the Hue We Made It one, they refer back to when they started implementing policies. But, no, I do not have something in writing that would say you're absolutely going to get this. That's just how they acknowledged it was implemented. With respect to the de minimis argument, the de minimis doctrine isn't about whether or not you have to pay somebody if you just don't feel like writing a check for that amount. If you can calculate what you owe them, you owe it to them. And the de minimis document is about when you can't actually articulate or figure out what small amount of time someone may have worked. They know how much it is. They know how much they owed Ms. Swope, Ms. Turner. They still owe Ms. Swope, Ms. Turner, and Ms. McDole. They just haven't paid it. That is not a de minimis situation. And to your Honor's point, I don't believe that the courts want to be sitting here saying, well, that tiny amount of money is not worth it. We don't have to pay them. There's reasons that you have overtime and minimum wage laws. With respect to the mootness question, this court has for decades had a very clear procedure for how do you settle an FLSA case, how it needs to be addressed. It has repeatedly considered offers such as the plaintiffs or the defendants to plaintiffs the sub would offer, repeatedly said it does not moot the case. The district court properly held the claims weren't mooted, found them to be prevailing parties, and awarded summary judgment in the plaintiff's behalf. They granted their summary judgment on the COVID bonus issue, but we had to actually file a summary judgment on the plaintiff's behalf to get the unpaid wages that they admitted that they owed them. So that was how they ended their case and how they became prevailing parties. And so we're going to ask the court to reconsider the lower court's decisions on unpaid lunch breaks, the FMLA claim, which we haven't talked about, and the discretionary bonus issue. And we'd ask that you affirm that the underlying claim, the three claimants, Andrea Turner, Aisha Swope, and Kenesha McDowell, were properly awarded unpaid overtime wages, which they were admittedly owed, plus liquidated damages, and deemed to be prevailing parties. Thank you. Thank you both. We have your case under advisement. Thank you.